**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

| |
|---|
| STRIKE 3 HOLDINGS, LLC,<br><br>      Plaintiff,<br><br>v.<br><br>JOHN DOE subscriber assigned IP address 24.7.203.5,<br><br>      Defendant. |

Civil Case No. 0:18-cv-00773-JRT-DTS

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S EX-PARTE MOTION FOR LEAVE TO SERVE A THIRD-PARTY SUBPOENA PRIOR TO A RULE 26(f) CONFERENCE**

# **TABLE OF CONTENTS**

I.   INTRODUCTION ................................................................................................ 1

II.  FACTS ............................................................................................................... 2

    A. Plaintiff Has A Serious Copyright Infringement Problem .................................. 2

    B. Plaintiff Brings Its Litigation in Good Faith ..................................................... 4

III. ARGUMENT ...................................................................................................... 5

    A. Legal Standard Governing Expedited Discovery Requests To Identify An Anonymous Defendant .......................................................................................................... 5

    B. There Is Good Cause for this Court to Grant Plaintiff's Motion for Leave to Serve Its Subpoena ....................................................................................................... 7

        1.  Plaintiff's Complaint Makes A Prima Facie Claim for Direct Copyright Infringement ................................................................................................ 7

        2.  Plaintiff Identifies the Limited and Specific Information Its Subpoena Seeks That Is Necessary to Serve Doe Defendant ............................................... 8

        3.  There Are No "Alternative Means" to Uncover Doe Defendant's True Identity ......... 9

        4.  The Subpoenaed Information Is Necessary to Advance Plaintiff's Infringement Claim ................................................................................ 10

        5.  Defendant's Minimum Privacy Interest Is Substantially Outweighed by Plaintiff's Interest in Protecting Its Copyrights from Mass BitTorrent Infringers ...................... 11

    C. Protective Order ............................................................................................ 12

IV. CONCLUSION ................................................................................................ 13

# TABLE OF AUTHORITIES

**Cases**

*A&M Records, Inc. v. Napster, Inc.*, 239 F.3d 1004, 1013 (9th Cir. 2001) .................................. 7

*ALARIS Grp., Inc. v. Disability Mgmt. Network, Ltd.*,
    No. CV 12-446 (RHK/LIB), 2012 WL 13029504 (D. Minn. May 30, 2012) ................ 5, 6, 8, 9

*Arista Records, L.L.C. v. Does 1-54*, No. CV 4:08-1289 (CEJ),
    2008 WL 4104563 (E.D. Mo. Aug. 29, 2008) .................................................... 9, 10

*Arista Records, LLC v. Doe 3*, 604 F.3d 110, 119 (2d Cir. 2010) ................................. 6

*Disability Rights Council of Greater Wash. v.*
    *Wash. Metro. Area Transit Auth.*, 234 F.R.D. 4, 6 (D. D.C. 2006) .......................... 8

*E. Coast Test Prep LLC v. Allnurses.com, Inc.*,
    No. CV 15-3705 (JRT/JSM), 2017 WL 5988231 (D. Minn. Jan. 24, 2017) .................... 6

*Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991) .......................... 7

*In re Charter Commc'ns, Inc., Subpoena Enf't Matter*,
    393 F.3d 771, 774 (8th Cir. 2005) ................................................................ 10

*John Wiley & Sons, Inc. v. Doe Nos. 1-30*,
    284 F.R.D. 185, 190 (S.D.N.Y. 2012) ........................................................... 9

*John Wiley & Sons, Inc. v. Doe*,
    284 F.R.D. 185, 190 (S.D.N.Y. 2012) ........................................................... 8

*Kennedy v. ITV Direct, Inc.*, No. CV 08-6244 (ADM/JSM),
    2009 WL 10678523 (D. Minn. Jan. 8, 2009) .............................................. 5, 6, 10

*Killer Joe Nevada, LLC v. Does 1-20*,
    807 F.3d 908, 912 (8th Cir. 2015) ............................................................. 5, 6

*Next Phase Distribution, Inc. v. John Does 1-27*,
    284 F.R.D. 165, 171–72 (S.D.N.Y. 2012) ...................................................... 10

*Patrick Collins, Inc. v. John Does 1-11*,
    No. CV 12-3146, 2013 WL 395497 (E.D. Pa. 2013) ........................................... 11

*Raw Films, Ltd. v. John Does 1-15*, No. CV 11-7248,
    2012 WL 1019067 (E.D. Pa. Mar. 26, 2012) .................................................... 8

*Sony Music Entm't Inc. v. Does 1-40*,
    326 F. Supp. 2d 556, 566 (S.D.N.Y. 2004) .................................................... 10

*Strike 3 Holdings, LLC v. Doe*, No. CV 3: 17-1680 (CSH),
    2017 WL 5001474 (D. Conn. Nov. 1, 2017) .................................................. 6, 12

*Taylor Corp. v. Four Seasons Greetings, LLC*,
    315 F.3d 1039, 1041–42 (8th Cir. 2003) ........................................................ 8

*United Pet Grp., Inc. v. Does*, No. CV 4:13-01053 AGF,
    2013 WL 4482917 (E.D. Mo. Aug. 20, 2013) ................................................... 6

*United States v. Horton*, 863 F.3d 1041, 1046 (8th Cir. 2017) .................................. 11

*United States v. Stults*, 575 F.3d 834, 842–43 (8th Cir. 2009) .................................. 11

*United States v. Suing*, 712 F.3d 1209, 1213 (8th Cir. 2013) ........................................................ 11

*United States v. Wheelock*, 772 F.3d 825, 828–29 (8th Cir. 2014).............................................. 11

**Statutes**

17 U.S.C. § 106(1) ............................................................................................................. 7

17 U.S.C. § 410(c) ............................................................................................................. 7

**Other Authorities**

Dylan Love, *The Most-Pirated Man in Porn Is Getting Angry*, Inverse (May 24, 2017),
   https://www.inverse.com/article/31350-greg-lansky-tushy-blacked-vixen-interview ................ 1

Statement Of Jason Weinstein Deputy Assistant Attorney General Criminal Division Before The
   Committee On Judiciary Subcommittee On Crime, Terrorism, And Homeland Security United
   States House Of Representatives, (January 2011) at
   http://www.justice.gov/sites/default/files/testimonies/witnesses/attachments/01/25/11//01-25-
   11-crm-weinstein-testimony-re-data-retention-as-a-tool-for-investigating-internet-child-
   pornography-and-other-internet-crimes.pdf ............................................................................ 2

**Rules**

Fed. R. Civ. P. 26(d)(1)...................................................................................................... 1

## MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S EX-PARTE MOTION FOR LEAVE TO SERVE A THIRD-PARTY SUBPOENA PRIOR TO A RULE 26(f) CONFERENCE

Pursuant to Fed. R. Civ. P. 26(d)(1), Plaintiff hereby respectfully submits this Memorandum of Law in support of its Motion for Leave to serve a third-party subpoena prior to a Rule 26(f) conference.

## I.    INTRODUCTION

Plaintiff, Strike 3 Holdings, LLC ("Strike 3" or "Plaintiff") is the owner of original, award winning motion pictures featured on its brand's subscription-based adult websites.[1] Unfortunately, Strike 3's success has led users on the Internet to illegally infringe its works on a very large scale.  Indeed, Strike 3's motion pictures are among the most infringed content in the world.  *See* Declaration of Greg Lansky, attached hereto as Exhibit "A."[2]

Strike 3 hired an investigator, IPP International U.G., to monitor and detect the infringement of Strike 3's content.  IPP discovered that Defendant's IP address was illegally distributing several of Strike 3's motion pictures. Strike 3's independent forensic expert, John S. Pasquale reviewed the evidence captured by IPP and confirmed that Defendant's IP address was involved in an infringing transaction at the exact date and time reported by IPP. *See generally* Declaration of John S. Pasquale, Exhibit "C."

Strike 3 only knows Defendant by his or her IP address.  This IP address is assigned to Defendant by his or her Internet Service Provider ("ISP"), which is the only

---

[1] *See generally* Declaration of Greg Lansky, attached hereto as Exhibit "A."
[2] *See also* Dylan Love, *The Most-Pirated Man in Porn Is Getting Angry*, INVERSE (May 24, 2017),  https://www.inverse.com/article/31350-greg-lansky-tushy-blacked-vixen-interview.

party with the information necessary to identify Defendant by correlating the IP address with John Doe's identity.  As a result, Plaintiff now seeks leave to serve limited, immediate discovery on Defendant's ISP, Comcast Cable Communications, LLC (Comcast Cable) so that Plaintiff may learn Defendant's identity, investigate Defendant's role in the infringement, and effectuate service.  Further impelling expediency, Defendant's ISP only maintains the internal logs of the requested information for a brief period of time.[3]

Plaintiff seeks leave of Court to serve a Rule 45 subpoena on Defendant's ISP. This subpoena will only demand the true name and address of Defendant.  Plaintiff will only use this information to prosecute the claims made in its Complaint.  Without this information, Plaintiff cannot serve Defendant nor pursue this lawsuit and protect its copyrights.

## II.   FACTS

### A.   Plaintiff Has A Serious Copyright Infringement Problem

Greg Lansky ("Mr. Lansky") is a member of General Media Systems, LLC, ("GMS"), the parent company that owns Strike 3.  *See* Exhibit "A" at ¶ 1.  Strike 3 owns the intellectual property to the *Blacked*, *Blacked Raw*, *Tushy*, and *Vixen* adult brands, including the copyrights to each of the motion pictures distributed through the brands'

---

[3] *See, e.g.*, Statement Of Jason Weinstein Deputy Assistant Attorney General Criminal Division Before The Committee On Judiciary Subcommittee On Crime, Terrorism, And Homeland Security United States House Of Representatives, (January 2011) at http://www.justice.gov/sites/default/files/testimonies/witnesses/attachments/01/25/11//01-25-11-crm-weinstein-testimony-re-data-retention-as-a-tool-for-investigating-internet-child-pornography-and-other-internet-crimes.pdf, stating: "Some [ISP] records are kept for weeks or months; others are stored very briefly before being purged."

sites and the trademarks to each of the brand names and logos. *Id.* at ¶ 3. Strike 3 is owned entirely by Mr. Lansky's company, GMS, and has existed since 2015. *Id.*

Mr. Lansky is the Chief Creative Officer of the *Blacked*, *Blacked Raw*, *Tushy*, and *Vixen* adult brands. *Id.* at ¶ 1. In 2006, Mr. Lansky moved to the United States from Paris to pursue his dream of creating art in an adult context. *Id.* at ¶ 4. He has always been passionate about photography and cinematography. *Id.*

It was a difficult start – Mr. Lansky could barely speak English, and he had trouble making connections and finding employment. *Id.* at ¶ 5. Eventually, after tremendous hard work, Mr. Lansky was fortunate to be hired by some of the biggest adult brands in the world. *Id.* at ¶ 6. Through these experiences, Mr. Lansky was able to establish himself and become an expert in the field. *Id.*

In 2013, Mr. Lansky decided to risk everything to create his own company and studio. *Id.* at ¶ 7. After a few years, his brands turned into a multi-million dollar a year business. *Id.* at ¶ 10. His philosophy is to pay artists and models an amount above that being paid by other companies, focusing on delivering superior quality adult films. *Id.* at ¶¶ 12–13. Moreover, Strike 3's motion pictures are known for having the highest production budget of any in the industry. *Id.* at ¶ 15.

Because of this, Strike 3's brand's websites have a subscriber base that is one of the highest of any adult sites in the world, with 20 million unique visitors to its websites per month, these websites enjoy a loyal following. *Id.* at ¶ 10. Strike 3 is also currently the number one seller of adult DVDs in the United States. *Id.* at ¶ 17. Finally, Strike 3's content is licensed throughout the world, including by most major cable networks. *Id.* at

¶ 18.  This success has led to numerous awards being bestowed upon Strike 3, such as "adult site of the year," "best marketing campaign – company image," and "best cinematography."  *Id*. at ¶ 19.  Mr. Lansky himself has also won "director of the year" three years in a row.  *Id*.

Unfortunately, piracy is a major threat and causes tremendous damage to Strike 3. As Mr. Lansky succinctly puts it, Strike 3 "can compete in the industry, but we cannot compete when our content is stolen."  *Id*. at ¶ 22.  To continue to provide value for members, exciting and inspiring projects for adult performers, and to continue to create top paying jobs and growth in the adult community, Strike 3 must protect its copyrights. *Id*. at ¶ 29.

**B.  Plaintiff Brings Its Litigation in Good Faith**

Strike 3 is mindful of the nature of the litigation and its goal is to not embarrass anyone or force anyone to settle unwillingly, especially anyone that is innocent.  *Id*. at ¶ 28.  Therefore, Strike 3 only files strong cases against extreme infringers.  *Id*. at ¶ 29. Indeed, each lawsuit is brought against infringers that not only engage in illegal downloading, but are also large scale unauthorized distributors of Strike 3's content.  *Id*. All defendants within the Strike 3 litigation have distributed, at a minimum, at least 15% of Strike 3's entire copyrighted library.  *Id*.  Moreover, Strike 3 does not seek settlements unless initiated by defendant or defendant's counsel.  *Id*. at ¶ 30.  Moreover, Strike 3 does not send demand letters nor make any attempt to contact a defendant prior to service of the Complaint.  *Id*.  Strike 3 is careful to only proceed to litigation with strong cases, when it has a good faith basis for doing so.  *Id*. at ¶ 31.

Strike 3 is a successful adult entertainment company that makes nearly all of its revenue from sales of subscriptions, DVDs, and licenses. *Id*. at ¶ 32. This litigation, or any litigation instituted by Strike 3, is not a business model. *Id*. Instead, Strike 3's goal is to deter piracy and redirect the infringement back into legitimate sales. *Id*. Proceeds that Strike 3 receives from settlements go back into making the company whole, including investing in better pay for artists and performers, better quality productions, and hiring and providing benefits for employees. *Id*.

## III.   ARGUMENT

### A.   <u>Legal Standard Governing Expedited Discovery Requests To Identify An Anonymous Defendant</u>

Cases such as this one are the paradigm for when leave to conduct pre-Rule 26(f) conference discovery should be allowed. "A plaintiff … *may* properly sue 'John Doe' to ascertain the ISP subscriber." *Killer Joe Nevada, LLC v. Does 1-20*, 807 F.3d 908, 912 (8th Cir. 2015). Although a party may not normally seek discovery prior to a Rule 26(f) conference, "[t]he rule is subject to limited exceptions, including a court order permitting discovery." *Kennedy v. ITV Direct, Inc.*, No. CV 08-6244 (ADM/JSM), 2009 WL 10678523, at *3 (D. Minn. Jan. 8, 2009). "District Courts within the circuit generally utilize a 'good cause' standard when considering whether expedited discovery is appropriate." *ALARIS Grp., Inc. v. Disability Mgmt. Network, Ltd.*, No. CV 12-446 (RHK/LIB), 2012 WL 13029504, at *2 (D. Minn. May 30, 2012) (collecting cases).

"Courts applying the good cause standard balance the need for the expedited discovery in the administration of justice against the prejudice to the responding party."

5

*Id.* "Courts have allowed expedited discovery in cases, such as this one, when the identity of the infringing defendant is masked by the defendants' use of technology or third-parties to hide their true identities." *United Pet Grp., Inc. v. Does*, No. CV 4:13-01053 AGF, 2013 WL 4482917, at *1 (E.D. Mo. Aug. 20, 2013). Neither the Eighth Circuit nor this Court has explicitly addressed what factors it analyzes when determining whether good cause exists for expedited discovery in online copyright infringement matters.[4] *See Killer Joe Nevada, LLC v. Does 1-20*, 807 F.3d 908, 912 (8th Cir. 2015). The prevailing analysis throughout the country examines:

> (1) the concreteness of the plaintiff's showing of a prima facie claim of actionable harm, (2) the specificity of the discovery request, (3) the absence of alternative means to obtain the subpoenaed information, (4) the need for the subpoenaed information to advance the claim, and (5) the objecting party's expectation of privacy.

*Arista Records, LLC v. Doe 3*, 604 F.3d 110, 119 (2d Cir. 2010) (internal brackets and ellipses omitted). After considering these five factors, such good cause exists here. *See e.g., Strike 3 Holdings, LLC v. Doe*, No. CV 3: 17-1680 (CSH), 2017 WL 5001474, at *2 (D. Conn. Nov. 1, 2017).

---

[4] While this Court has noted expedited discovery is appropriate in cases involving infringement, *ALARIS Grp., Inc. v. Disability Mgmt. Network, Ltd.*, No. CV 12-446 (RHK/LIB), 2012 WL 13029504, at *1–2 (D. Minn. May 30, 2012), so far it has not yet directly discussed a standard for this type of case. *See e.g., Kennedy v. ITV Direct, Inc.*, No. CV 08-6244 (ADM/JSM), 2009 WL 10678523, at *3–4 (D. Minn. Jan. 8, 2009) (discussing expedited discovery with respect to a preliminary injunction for copyright infringement); *E. Coast Test Prep LLC v. Allnurses.com, Inc.*, No. CV 15-3705 (JRT/JSM), 2017 WL 5988231, at *6–7 (D. Minn. Jan. 24, 2017) (defamation). The factors examined in these cases, such as showing a prima facie case and the necessity of the subpoenaed information, overlap with the more rigorous *Arista* analysis.

**B.** **There Is Good Cause for this Court to Grant Plaintiff's Motion for Leave to Serve Its Subpoena**

*1. Plaintiff's Complaint Makes A Prima Facie Claim for Direct Copyright Infringement*

To make a prima facie claim for copyright infringement, Plaintiff must show (1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original. *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991). Plaintiff's Complaint accomplishes this, stating: (1) "Plaintiff is the owner of the Works, which [are] an original work of authorship"; (2) "[d]efendant copied and distributed the constituent elements of Plaintiff's Works using the BitTorrent protocol"; and (3) "[a]t no point in time did Plaintiff authorize, permit or consent to Defendant's distribution of its Works, expressly or otherwise." *See* Complaint at ¶¶ 35–37.

Plaintiff owns a valid copyright in the Works, which are registered with the United States Copyright Office or have complete applications pending. *See* 17 U.S.C. § 410(c); *see also* Complaint at ¶¶ 31–33. Plaintiff's prima facie allegations of infringement are attested to by Plaintiff's investigator, IPP International U.G.'s employee, Tobias Fieser. *See* Declaration of Tobias Fieser, Exhibit "B." Finally, each digital file has been verified to be a copy of one of Plaintiff's copyrighted works. *See* Declaration of Susan B. Stalzer, Exhibit "D."

Plaintiff has also made a plausible prima facie showing of "copying." "'The word 'copying' is shorthand for the infringing of any of the copyright owner's five exclusive rights' described in § 106." *A&M Records, Inc. v. Napster, Inc.*, 239 F.3d 1004, 1013 (9th Cir. 2001). Plaintiff's Complaint alleges that Doe Defendant not only downloaded

7

Plaintiff's works over the BitTorrent network, *see* 17 U.S.C. § 106(1), but also distributed these files to the BitTorrent swarm. *See id.* § 106(3); *see also* Complaint at ¶ 38. As a result, Plaintiff's complaint makes a prima facie claim for copyright infringement and the first factor weighs in favor of expedited discovery. *See Arista Records*, 604 F.3d at 117.[5]

### 2. *Plaintiff Identifies the Limited and Specific Information Its Subpoena Seeks That Is Necessary to Serve Doe Defendant*

Plaintiff's Subpoena is limited and only "seeks concrete and narrow information: the name and address of the subscriber associated with [Doe Defendant's] IP address . . . ." *John Wiley & Sons, Inc. v. Doe*, 284 F.R.D. 185, 190 (S.D.N.Y. 2012). "The subpoena is specific enough to give rise to a reasonable likelihood that information facilitating service upon proper defendants will be disclosed if the ISPs comply." *Raw Films, Ltd. v. John Does 1-15*, No. CV 11-7248, 2012 WL 1019067, at *7 (E.D. Pa. Mar. 26, 2012) (denying motion to quash subpoena). "[A]lthough the provision of this information may not directly identify the proper defendants, it is sufficiently tailored to lead to the identification of those individuals." *Id.* Hence, the second factor weighs in Plaintiff's favor.

---

[5] *Compare ALARIS Grp., Inc.*, No. CV 12-446 (RHK/LIB), 2012 WL 13029504, at *1–2 (D. Minn. May 30, 2012) (discussing a preliminary injunction as a factor in granting expedited discovery) (citing *Disability Rights Council of Greater Wash. v. Wash. Metro. Area Transit Auth.*, 234 F.R.D. 4, 6 (D. D.C. 2006)) *with Taylor Corp. v. Four Seasons Greetings, LLC*, 315 F.3d 1039, 1041–42 (8th Cir. 2003) ("In copyright-infringement cases, the general rule is that a showing of a *prima facie* case raises a presumption of irreparable harm.") (citations omitted).

### 3. There Are No "Alternative Means" to Uncover Doe Defendant's True Identity

At this early stage in litigation, Plaintiff has a limited view into Defendant's true identity, only having access to the offending IP address. *See John Wiley & Sons, Inc. v. Doe Nos. 1-30*, 284 F.R.D. 185, 190 (S.D.N.Y. 2012) ("BitTorrent software is 'largely anonymous' except insofar as it requires a user to broadcast the user's IP address."). People using the Internet are anonymous to the public, but the ISPs responsible for assigning any given IP address "know who an address is assigned to and how to get in contact with them."[6]  ISPs' records "are the only available evidence that allows us to investigate who committed crimes on the Internet.  They may be the only way to learn, for example, that a certain Internet address was used by a particular human being to engage in or facilitate a criminal offense."[7]

 "Plaintiffs are unable to obtain the subscribers' names by any other means, and without this information the case cannot proceed." *Arista Records, L.L.C. v. Does 1-54*, No. CV 4:08-1289 (CEJ), 2008 WL 4104563, at *1 (E.D. Mo. Aug. 29, 2008). "Because the information regarding the identity of the IP subscriber is available only for a limited time, the plaintiffs may lose the opportunity to assert their rights if they are not allowed immediate discovery." *Id.*; *cf. ALARIS Grp.*, No. CV 12-446 (RHK/LIB), 2012 WL

---

[6]  *Beginner's Guide to Internet Protocol (IP) Addresses* at p. 4, available at https://www.icann.org/en/system/files/files/ip-addresses-beginners-guide-04mar11-en.pdf.; *American Registry for Internet Numbers Number Resource Policy Manual* at 4.2, available at https://www.arin.net/policy/nrpm.html#four2.

[7] Statement from Jason Weinstein, n.2, *supra*.

13029504 at *2 (noting "expedited discovery may be appropriate in cases where physical evidence may be consumed or destroyed").

There is no public registry of what IP addresses correspond to which subscribers, hence Plaintiff's subpoena is necessary to advancing litigation. *See* Exhibit "C" ("[A] subpoena to an ISP is consistently used by civil plaintiffs and law enforcement to identify a subscriber of an IP address."); *In re Charter Commc'ns, Inc., Subpoena Enf't Matter*, 393 F.3d 771, 774 (8th Cir. 2005) ("Only the ISP . . . can link a particular IP address with an individual's name and physical address."). Since Plaintiff "cannot identify [Doe Defendant] without a court-ordered subpoena, . . . there is good cause to allow for early discovery." *Next Phase Distribution, Inc. v. John Does 1-27*, 284 F.R.D. 165, 171–72 (S.D.N.Y. 2012).

### 4. The Subpoenaed Information Is Necessary to Advance Plaintiff's Infringement Claim

As previously emphasized, Plaintiff cannot properly serve Doe Defendant without first obtaining the subscriber's identity from his or her ISP. "The information sought by [Plaintiff] is necessary for [Plaintiff] to identify who should and should not be a party to this action." *Kennedy v. ITV Direct, Inc.*, No. CV 08-6244 (ADM/JSM), 2009 WL 10678523, at *3 (D. Minn. Jan. 8, 2009) (citing *Arista Records, L.L.C. v. Does 1-54*, 2008 WL 4104563 at *1 (E.D. Mo. Aug. 29, 2008)). "Thus, identifying and serving the alleged infringers is the only method through which Plaintiff can protect its copyright interests." *Canal St. Films v. Does 1-22*, No. CV 1:13-0999, 2013 WL 1775063, at *3 (M.D. Pa. Apr. 25, 2013). "Ascertaining the identities and residences of the Doe

defendants is critical to plaintiffs' ability to pursue litigation, for without this information, plaintiffs will be unable to serve process." *Sony Music Entm't Inc. v. Does 1-40*, 326 F. Supp. 2d 556, 566 (S.D.N.Y. 2004).  Indeed, without receiving Defendant's identity, Plaintiff cannot proceed with its lawsuit.

5. ***Defendant's Minimum Privacy Interest Is Substantially Outweighed by Plaintiff's Interest in Protecting Its Copyrights from Mass BitTorrent Infringers***

The Eighth Circuit has consistently held that subscribers do not possess a privacy interest in their IP address, particularly if that individual has used a peer-to-peer software like BitTorrent. *See e.g.*, *United States v. Stults*, 575 F.3d 834, 842–43 (8th Cir. 2009) ("Several federal courts have rejected the argument that an individual has a reasonable expectation of privacy in his or her personal computer when file-sharing software, such as LimeWire, is installed.") (collecting cases); *United States v. Suing*, 712 F.3d 1209, 1213 (8th Cir. 2013)  (finding defendant lacked an expectation of privacy when he "chose to share pornographic files via a peer-to-peer network."). "With [the ISP] in possession of his subscriber data, [Defendant] cannot claim a reasonable 'expectation of privacy in [the] acquisition of his subscriber information, including his IP address and name from third-party service providers.'" *United States v. Wheelock*, 772 F.3d 825, 828–29 (8th Cir. 2014) (finding "no reasonable expectation of privacy in the subscriber information") (collecting cases); *see also United States v. Horton*, 863 F.3d 1041, 1046 (8th Cir. 2017) ("A defendant's publicly available information may not be entitled to Fourth Amendment protection.").

11

"[C]ourts analyzing the expectation of privacy possessed by internet users engaging in online file-sharing have concluded that such expectation is at most minimal because those individuals have already voluntarily given up certain information by engaging in that behavior." *Patrick Collins, Inc. v. John Does 1-11*, No. CV 12-3146, 2013 WL 395497, at *4 (E.D. Pa. 2013). "In sum . . . the Doe Defendant's First Amendment right to remain anonymous must give way to Plaintiff's right to use the judicial process to pursue its allegedly meritorious copyright infringement claim. Moreover, the Doe Defendant lacks the right under the Fourth Amendment to protect his IP address from revelation, where he has voluntarily shared such information with the Internet Service Provider." *Strike 3 Holdings*, No. CV 3:17-1680 (CSH), 2017 WL 5001474 at *6.

### C.  Protective Order

In some BitTorrent cases involving adult content, courts have found it appropriate to issue a protective order establishing procedural safeguards such as allowing a defendant to proceed anonymously.  *See e.g.*, *Strike 3 Holdings*, No. CV 3:17-1680 (CSH), 2017 WL 5001474 at *6–7 (noting "the Court will accept Plaintiff's request to establish procedures to protect the Doe Defendant's privacy here"). Strike 3 respectfully encourages the Court to establish such procedures here, should the Court find it appropriate.

## IV.    CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests this Court grant leave to

Plaintiff to issue a Rule 45 subpoena to Defendant's ISP.

Dated: 04/19/2018                              Respectfully submitted,

                                               **FOX ROTHSCHILD, LLP**

                                               By:  /s/ *Adam P. Gislason*
                                                    Adam P. Gislason, Esq. (#0324176)
                                                    agislason@foxrothschild.com
                                                    Campbell Mithun Tower
                                                    222 South Ninth Street Suite 2000
                                                    Minneapolis MN 55402-3338
                                                    Tel.: (612) 607-7000
                                                    Fax: (612) 607-7100
                                                    www.foxrothschild.com
                                                    *Attorneys for Plaintiff*

13