UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

STRIKE 3 HOLDINGS, LLC,                    CIVIL NO. 18-773 (JRT/DTS)

    Plaintiff,

v.                                         ORDER

JOHN DOE subscriber
assigned IP address 24.7.203.5,

    Defendant.

---

Adam P. Gislason, Esq., Fox Rothschild, LLP, 222 South Ninth Street, Suite 2000, Minneapolis, MN 55402, for plaintiff.

---

This matter is before the Court on plaintiff 3 Strike Holdings, LLC's Motion for Leave to Serve a Third-Party Subpoena Prior to a Rule 26(f) Conference. ECF No. 5. Plaintiff filed the same motion in a similar case in the District of Minnesota, Civil No. 18-768, and the undersigned magistrate judge agrees with the reasoning in the April 24, 2018 Order[1] entered in that case. The undersigned repeats and incorporates that reasoning below and denies Plaintiff's motion.

**A.    Background**

Plaintiff is the owner of "award winning, critically acclaimed adult motion pictures." Complaint ¶ 2, ECF No. 1. Plaintiff's motion pictures are distributed on the internet through various adult websites, "Blacked, Tushy, Vixen, and Blacked Raw[,]"

---

[1] April 24, 2018 Order of U.S. Magistrate Judge Franklin L. Noel, ECF No. 14 in Civil No. 18-768.

1

and are available for purchase on DVD. *Id.* ¶ 3. On March 21, 2018, Plaintiff initiated this suit against the unnamed Defendant, raising one copyright infringement count under 17 U.S.C. §§ 106 and 501. *Id.* ¶¶ 6, 34-39. Plaintiff's Complaint alleges that Defendant, using the BitTorrent protocol, committed "rampant and wholesale copyright infringement by downloading [Plaintiff's] motion pictures as well as distributing them to others." *Id.* ¶ 4. Plaintiff claims that Defendant infringed "31 movies over an extended period of time." *Id.*

Plaintiff "currently can only identify Defendant by his or her IP [internet protocol] address." *Id.* ¶ 12. Defendant's IP address was ascertained by IPP International U.G., Plaintiff's investigator [*id.* ¶ 24], who found that an "IP address [believed to be connected to Defendant] was illegally distributing several of [Plaintiff's] motion pictures." Pl. Br. 1, ECF No. 7; Fieser Decl. ¶ 7, ECF No. 11. In the instant *ex parte* motion, Plaintiff seeks leave to serve "limited, immediate discovery on Defendant's ISP [Internet Service Provider], Comcast Cable Communications, LLC" ("Comcast"). Pl. Br. 2, ECF No. 7. To that end, Plaintiff moves to serve a subpoena, pursuant to Federal Rule of Civil Procedure 45, on Comcast. *Id.* Plaintiff's Rule 45 subpoena "will only demand the true name and address of Defendant." *Id.* Plaintiff represents that it will "only use this information to prosecute the claims made in its Complaint." *Id.* Plaintiff claims that without this information, it "cannot serve Defendant nor pursue this lawsuit and protect its copyrights."[2] *Id.*

---

[2] The information Plaintiff seeks to subpoena will not establish the identity of the alleged infringer of its copyright. At most, it will identify who subscribes to the internet service that assigned the IP address that Plaintiff's investigator believes was used to unlawfully view and distribute Plaintiff's copyrighted films. The case of *Killer Joe Nevada, LLC v. Does 1-20*, 807 F.3d 908 (8th Cir. 2015), discussed *infra*, demonstrates this point. In

2

**B.     Legal Discussion**

Plaintiff's *ex parte* motion illustrates an ongoing conflict between the Digital Millennium Copyright Act (DMCA), 17 U.S.C. § 512, the Communications Act, 47 U.S.C. § 551, and Federal Rule of Civil Procedure 45. At the heart of this conflict is whether a copyright owner can use the federal judiciary to discover evidence about a potential, alleged infringer when the infringer's actual identity is unknown. This friction has been exacerbated by the proliferation of, beginning with Napster, peer-to-peer or file sharing computer programs.

In 1998, Congress enacted DMCA as a legislative compromise to this conflict. DMCA permitted copyright owners to obtain and serve subpoenas on ISPs to ascertain information about an ISP subscriber alleged to be illegally transmitting copyrighted works via the internet. "DMCA was the product of lengthy negotiations between copyright owners and [ISPs]. It was designed to strike a balance between the interests of ISPs in avoiding liability for infringing use of their services and the interest of copyright owners in protecting their intellectual property and minimizing online piracy."[3] *In Re Charter Commc'ns*, 393 F.3d 771, 774 (8th Cir. 2005).

---

*Killer Joe Nevada*, the defendant, after being identified by the very process Plaintiff seeks to invoke here, denied she had infringed Killer Joe Nevada's copyright and filed a counterclaim seeking a declaratory judgment that she had not infringed. 807 F.3d at 911. Plaintiff there immediately moved to voluntarily dismiss its claim of copyright infringement. *Id.*

[3] DMCA "created . . . [four safe harbors to] protect ISPs from liability for copyright infringement under certain conditions. Each safe harbor applies to a particular ISP function." *In Re Charter Commc'ns*, 393 F.3d at 775. "The first safe harbor, under § 512(a), limits the liability of ISPs when they do nothing more than transmit, route, or provide connections for copyrighted material—that is, when the ISP is a mere conduit for the transmission." *Id.* The remaining three safe harbors protect ISPs when they do nothing more than: "[(1)] system caching, that is, instances when they provide intermediate and temporary storage of material . . . [; (2)] [facilitate] material residing on

DMCA permits the clerk of court for a given federal district "to issue a subpoena to a service provider for identification of an alleged infringer." 17 U.S.C. § 512(h). However, in *In Re Charter Communications*, the Eighth Circuit held that DMCA's subpoena provision did not apply to a "copyright owner . . . request[ing] a subpoena for an ISP which merely acts as a conduit for data transferred between two internet users." 393 F.3d at 776. Put differently, DMCA does not apply to the facts of the instant case because Comcast, the ISP Plaintiff seeks to subpoena, is acting only as a conduit for data transferred between two internet users. *In Re Charter Communications* effectively precludes an alleged infringement victim from invoking DMCA to obtain a subpoena to identify infringers using peer-to-peer file sharing.[4]   393 F.3d at 777.

*In Re Charter Communications* relied heavily on the D.C. Circuit's reasoning in *Recording Industry Association of America, Inc. v. Verizon Internet Services, Inc.,* 351 F.3d 1229, 1232 (D.C. Cir. 2003).  *Id.*  In *Verizon*, the D.C. Circuit reasoned that it is the province of Congress, not the federal judiciary, to determine whether to amend DMCA "in order to make it fit a new and unforeseen internet architecture" and "accommodate fully the varied permutations of competing interests that are inevitably implicated by such new technology" attendant to the increased use of peer-to-peer file sharing protocols.  351 F.3d at 1238.

Rather than invoke the direct subpoena provision of DMCA, Plaintiff here filed a lawsuit against John Doe, then filed the instant *ex parte* motion to serve expedited discovery on the third-party ISP, Comcast. Plaintiff is seeking to serve the subpoena

---

the ISP's system or network at the direction of its users . . . [; and (3)] when [an ISP] merely links users to online locations containing infringing material."  *Id.*

[4] In *In Re Charter Communications*, the Eighth Circuit quashed the subpoena that had been issued by the Clerk of Court for the Eastern District of Missouri.  393 F.3d at 774.

under Federal Rule of Civil Procedure 45 to ascertain what it describes as Defendant's name and address.[5] However, that very requested material, disclosure of a cable subscriber's personally identifiable information, is protected under another federal law, the Communications Act. *See* 47 U.S.C. § 551(c). Specifically, a cable operator, such as Comcast here, "shall not disclose personally identifiable information concerning any subscriber without the prior written or electronic consent of the subscriber concerned." *Id.* § 551(c)(1). Furthermore, the Communications Act prohibits a cable provider from disclosing the "extent of any viewing or other use by the subscriber of a cable service or other service provided by the cable operator." *Id.* § 551(c)(2)(C)(ii)(I). Again, as is the case with DMCA, the conundrum here is that the information Plaintiff seeks through a Rule 45 subpoena poses a direct conflict between Plaintiff's property interest and Defendant's privacy protections afforded under federal law in the Communications Act. This direct conflict between DMCA and the Communications Act was argued by the parties in *In Re Charter Communications*. However, as the Eighth Circuit quashed the subpoena on other grounds, it never reached or resolved this issue.

This Court concludes that the conflict between the statutes, DMCA and the Communications Act, compels it to deny Plaintiff's instant *ex parte* motion. As the Eighth Circuit reasoned in *In Re Charter Communications*, when it held that DMCA did not authorize the subpoena the district court had issued, "it is the province of Congress, not

---

[5] As discussed in footnote two, *supra*, the most Plaintiff will obtain from its proposed subpoena is the name and address of the Comcast subscriber who was assigned the IP address Plaintiff's investigator believes was used to accomplish the infringement. Without further discovery, the information Plaintiff seeks will not establish the actual identity of the infringer.

the courts, to decide whether to rewrite the DMCA 'in order to make it fit a new and unforeseen internet architecture.'" 393 F.3d at 777 (quoting *Verizon*, 351 F.3d at 1238).

This Court is mindful of footnote three in *In Re Charter Communications*, 393 F.3d at 777 n.3. In dicta, the Eighth Circuit suggested that the procedure adopted here, use of a Rule 45 subpoena in a John Doe lawsuit, is an appropriate work-around of its holding that DMCA does not apply to the subpoena it quashed. The dicta in footnote three, however, ignores the requirements of Federal Rule of Civil Procedure 10(a) that a complaint must name all of the parties. Moreover, footnote three is not a holding. In this Court's view, footnote three does not compel it to permit the issuance of the requested subpoena here.  Finally, that the Eighth Circuit did not address the merits of the conflict between the Communications Act and DMCA further undermines the applicability of footnote three to the facts at issue here.

Indeed, in *Killer Joe Nevada,* 807 F.3d at 912, the appellant argued that it was an abuse of discretion for the district court to allow a Copyright Act plaintiff to sue an ISP subscriber without first investigating whether the subscriber was responsible for the infringement. As the Eighth Circuit opined, "[a]lthough this court has not reached that precise question, a plaintiff such as Killer Joe Nevada *may* properly sue 'John Doe' to ascertain the ISP subscriber." *Id.* (emphasis in the original).  The Court then held it was not an abuse of discretion for the district court to permit Killer Joe Nevada to proceed as it did, in part, because the appellant there had cited no binding precedent to the contrary. *Id.* As such, *Killer Joe Nevada* simply stands for the proposition that it is not an abuse of discretion to permit a plaintiff to proceed as Plaintiff here has. *Killer Joe Nevada* is not a binding precedent that compels this Court to grant Plaintiff's motion.

Like *In Re Charter Communications*, *Killer Joe Nevada* does not include a substantive discussion of the conflict between the Communication Act's requirement that a cable subscriber's identity be protected and the process adopted here by Plaintiff, to compel the ISP to disclose the subscriber's name and address under Rule 45. This Court concludes that it retains the requisite discretion to consider the conflict, in light of *Killer Joe Nevada's* express recognition that the Eighth Circuit has not reached the precise question upon which the appellant's argument rested there.

Here, weighing Plaintiff's property interest against Defendant's privacy interest, the Court concludes that it must deny Plaintiff's *ex parte* motion. From this Court's perspective there are obvious tensions between DMCA, the Communications Act, and Federal Rule of Civil Procedure 45. The Court is not unsympathetic to Plaintiff's need to discover the actual identity of the infringer of its copyright; however, the discovery sought by Plaintiff through a Rule 45 subpoena directly collides with federal privacy protections. In the absence of binding Eighth Circuit precedent or further guidance from Congress, this Court is compelled to deny Plaintiff's *ex parte* motion.

ORDER

The Court, being duly advised in the premises, upon all of the files, records and proceedings herein, now makes and enters the following Order.

IT IS HEREBY ORDERED that Plaintiff's Motion for Leave to Serve a Third-Party Subpoena Prior to a Rule 26(f) Conference [ECF No. 5] is DENIED.

Dated: April 30, 2018

*s/ David T. Schultz*
DAVID T. SCHULTZ
United States Magistrate Judge